Filed 10/7/19 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| JASWINDER CHEEMA,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>L.S. TRUCKING, INC.,<br><br>     Defendant and Appellant. | A150234, A151044<br><br>(Alameda County<br>Super. Ct. No. HG12611230)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 17, 2019, be modified as follows:

On page 8, line 3, the sentence beginning "While LS Trucking contends" is deleted and the following sentence is inserted in its place:

> "While LS Trucking contends it was agreed that it would pay for the box "plus interest" within three years with monthly $1,000 installments, it does not contend that anything was said about when installments would commence, what rate of interest would be paid or, most importantly, when ownership would be deemed to pass to LS Trucking."

There is no change in the judgment.

The petitions for rehearing are denied.

Date: _____ P. J.

| | |
|---|---|
| Trial court: | Alameda County Superior Court |
| Trial judge: | Honorable Sandra K. Bean |
| Counsel for plaintiff and appellant: | Jewell J. Hargleroad |
| Counsel for defendant and appellant: | Paul Kleven |

A150234, A151044

Filed 9/17/19 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JASWINDER CHEEMA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>L.S. TRUCKING, INC.,<br><br>        Defendant and Appellant. | A150234, A151044<br><br>(Alameda County<br>Super. Ct. No. HG12611230) |

After a bench trial, Jaswinder Cheema recovered damages from L.S. Trucking, Inc. (LS Trucking or LS) for having underpaid him and for having failed to make timely payments due him as a "subhauler" for LS Trucking, driving a Super Dump truck with an attached trailer (or "box"). In these cross-appeals, Cheema contends that the trial court erred in denying his request for prejudgment interest pursuant to Civil Code section 3287 and for penalty interest pursuant to Civil Code section 3322.[1] LS Trucking challenges the

---

[1] Civil Code section 3322, subdivision (a) provides: "(1) A broker of construction trucking services shall pay all transportation charges submitted by a motor carrier of property in dump truck equipment by the 25th day following the last day of the calendar month in which the transportation was performed, if the charges, including all necessary documentation, are submitted by the fifth day following the last day of the calendar month in which the transportation was performed. If there is a good faith dispute over a portion of the charges claimed, the broker may withhold payment of an amount not to

court's conclusion that the parties' oral agreement for Cheema to sell it the box, justifying its deductions for rental of the box from its payments to Cheema, was unenforceable, and it also contends that the amount of attorney fees awarded to Cheema is excessive.

We conclude that the court erred only in refusing to award prejudgment interest and penalty interest to Cheema. We shall therefore remand for the court to calculate and award the proper amounts of prejudgment and penalty interest, and shall affirm the judgment and the order awarding attorney fees in all other respects.

## Factual and Procedural History

The issues in dispute are, to say the least, somewhat complicated. LS Trucking is a trucking company that also operates as a broker of construction trucking services. Pursuant to a 2009 oral agreement between LS Trucking and Cheema, Cheema purchased a Super Dump Truck and a detachable box, with the understanding that LS would purchase the box from Cheema. Because LS Trucking owned the box, it would give priority to Cheema in dispatching assignments to Cheema as a subhauler.[2] The two parties entered a written "Subhauler and Trailer Rental Agreement" (the Agreement) under which Cheema would submit to LS Trucking completed freight bills (referred to as "truck tags") for all hauling that he performed for LS, based on which LS would prepare statements showing the amount billed payable to Cheema, less (among other deductions)

---

exceed 150 percent of the estimated cost of the disputed amount. [¶] (2) A broker who violates paragraph (1) shall pay the motor carrier of property dump truck equipment a penalty of 2 percent per month on the improperly withheld amount. [¶] (3) In an action for collection of moneys not paid in accordance with paragraph (1), the prevailing party shall be entitled to his or her attorney's fees and costs."

All further statutory references are to the Civil Code.

[2] LS Trucking brokers the services of two types of subhaulers driving Super Dump trucks: "pullers," who own their own trucks but rent a box from LS Trucking, and independent owner-operators (independents), who own their own Super Dump truck and attached box. In assigning jobs, LS Trucking gives pullers priority over independents and deducts from its payments to pullers a fee for rental of the box.

2

a 7.5 percent brokerage fee and, if the work was performed with a box owned by LS, a 17.5 percent rental fee. The Agreement contains a provision awarding reasonable attorney fees to the prevailing party in any action "arising from or [in] relation to this Agreement."

Cheema began providing hauling services with his Super Dump truck and the attached box in late September 2009, and received his first statement and payment for his services on November 5, 2009. From this and succeeding payments LS Trucking deducted the brokerage fee, which Cheema does not dispute, and a rental fee for the box.[3] Cheema contends that because LS Trucking failed to pay him the $32,835.09 purchase price of the box as allegedly agreed, the box remained his, and LS was not entitled to deduct rental fees from the payments due him. LS Trucking did deduct rent from all payments to Cheema beginning in September 2009, but made no payment towards purchase of the box until June 15, 2010, when it began paying Cheema $1,000 a month for nine months, noting on the checks that the payments were repayment of a "loan." Cheema's amended complaint alleges not only that rent totaling $15,168.24 was wrongly deducted from his payments over the period he worked for LS Trucking,[4] but also that LS "became increasingly late in its payments," so that, "[b]y December 2010, Cheema was being paid for work performed in August 2010." He alleged that for 140 hours of work performed from December 2010 through March 12, 2011, he had not been paid at all.[5]

---

[3] The rental fee deducted from the payments to Cheema was 12.5 percent. LS Trucking's principal Leonel Serrato testified that, despite the language in the standard written agreement, LS in fact charged a 17.5 percent rental fee to pullers who rented an end-dump trailer and a 12.5 percent fee to pullers who rented a Super Dump box.

[4] Cheema also disputed an additional $279 that was deducted as rent for use of the box in connection with transportation Cheema provided independent of his contract with LS.

[5] Cheema also asserted his causes of action against Leonel Serrato on an alter ego theory. The trial court found that LS Trucking was not Serrato's alter ego and dismissed all causes of action as against him. Cheema does not appeal that aspect of the judgment.

LS Trucking cross-complained against Cheema alleging, among other things, that it "is the owner and entitled to possession of a super dump trailer" that it purchased from Cheema, that Cheema rented the trailer from LS, and that Cheema "terminated their rental agreement but failed and refused . . . to return the super dump trailer" to LS. As LS has stated on appeal, "The principal issue in the case was the effect of a verbal agreement between the parties under which LS Trucking agreed to purchase the box that was on a Super Dump truck that Cheema had purchased . . . ."

Following a nine-day bench trial, issuance of a tentative and proposed statement of decision and consideration of objections thereto, the court issued its statement of decision. The court concluded that "the parties' supposed agreement to sell the super dump box/trailer from Cheema to LS Trucking is not enforceable for two reasons. First, title exists only for the truck as a whole which shows the agreement to sell only the dump box/trailer had an illegal object. . . . If there is no legal means of obtaining title to only the dump box/trailer, then it is not possible to sell it without selling the whole truck and the parties' attempt to do so is void. [¶] Second, the court finds this supposed oral agreement to sell the dump box/trailer is too indefinite or uncertain to be enforceable. (See, e.g., . . . § 1596.) . . . The complicated transaction involved Cheema paying 'rent' to LS Trucking even though Cheema bought the truck[,] and possession or title to it never passed to LS Trucking. LS Trucking also paid Cheema nine $1,000 payments for the dump box/trailer, but there was never any clear and definite agreement between the parties that the dump box/trailer would transfer immediately to LS Trucking with LS Trucking's purchase price to be paid to Cheema in monthly installments. The court cannot enforce this uncertain and unduly complicated arrangement." Since "there was no enforceable agreement to buy the dump box, then LS Trucking should not have charged Cheema 'rent' for use of the trailer."[6] The court held that Cheema was entitled to recover

---

[6] The court stated that the deductions could not be construed as a breach of the "Subhauler and Trailer Rental Agreement" because the Agreement "simply provides that if LS Trucking provided a trailer then it could charge rent for it, but here LS Trucking did not provide a trailer to Cheema." The court found that under Cheema's causes of action

4

the amount that LS Trucking had deducted for trailer rent, plus the amount he was owed for unpaid truck tags, less the $9,000 he had received in $1,000 monthly payments, for a net amount of $19,113.84.

The court denied Cheema's request for penalties under section 3322 because "Cheema did not meet his burden of proof to trigger the protections of the statute. Cheema was required to submit 'charges' including all necessary documentation for payment by the fifth day of the month following the date the work was performed. Cheema merely provided the court with Shipping Order and Freight Bills on LS Trucking forms. The court cannot determine the amount due and owing to Cheema, i.e., the 'charges' from these forms for any of the jobs. The reference to 'necessary documentation' requires at least an invoice that sets forth specific information about the job, the work performed, the hours worked, the pay rate, the distance driven, and the exact amount owed to the independent contractor."

The court rejected all of LS Trucking's claims because all were predicated on it having purchased the trailer, while "title to it never transferred to LS Trucking and it was not legally possible for [LS] to buy only the dump box by itself." The court also held that Cheema was the prevailing party entitled to recover his attorney fees, and in subsequent proceedings awarded Cheema the full $100,415 in fees that he requested.

In a posttrial motion, Cheema claimed that he was entitled to prejudgment interest on the amount of his recovery. The court denied the request for mandatory prejudgment interest under section 3287, subdivision (a) "because his damages in this case were not certain or capable of being made certain until after trial where the court found that the agreement to sell Cheema's dump box/trailer to LS Trucking was not enforceable. . . . There was no certainty until after trial regarding how much Cheema was owed by LS

---

"for reasonable value of services rendered and account stated, LS must reimburse Cheema for amounts Cheema paid to LS Trucking in 'rent,' but Cheema must reimburse LS Trucking for the installment payment amounts of $9,000 that LS Trucking paid toward purchase of the dump box/trailer."

Trucking, and Cheema did not show he was entitled to recover damages in an amount certain or in an amount capable of being made certain that vested on a particular day."[7] The court also declined again to award 2 percent penalty interest under section 3322. It rejected Cheema's argument that "the only documents he was required to provide to LS Trucking were completed freight bills," repeating its finding that the freight bills "do not show Cheema's charges, including all necessary documentation."

Both parties have timely appealed. Cheema disputes the failure to award him prejudgment interest and penalties under section 3322. LS Trucking disputes the trial court's determination that the verbal agreement to sell the trailer was void,[8] and, in a separate appeal consolidated with the cross-appeals from the judgment, contends the award of attorney fees is excessive.

**Discussion**

1. *The trial court correctly held the verbal agreement to sell the box to be unenforceable.*

Although we question the trial court's determination that the verbal agreement for Cheema to sell the dumpster box to LS Trucking was illegal—since the box can be physically detached from the dumpster and need not be separately registered with or licensed by the Department of Motor Vehicles—we need not decide that issue because we agree that the verbal understanding was so uncertain that it is unenforceable.

---

[7] The court also declined to award discretionary prejudgment interest on damages that were not certain because "the unenforceable agreement to sell the dump box/trailer was a misguided attempt by the parties to compensate LS Trucking for giving Cheema dispatch priority." Cheema does not challenge this ruling.

[8] LS Trucking also newly contends that if the verbal agreement to sell the box is voided for illegality, the written Agreement must be voided as well. Because we affirm the judgment without regard to the asserted illegality of the oral agreement, we need not consider this new argument or whether LS Trucking may raise this argument for the first time on appeal.

"Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable. [Citations.] 'Although the terms of a contract need not be stated in the minutest detail, it . . . must evidence a meeting of the minds upon the essential features of the agreement, and . . . the scope of the duty and limits of acceptable performance [must be] sufficiently defined to provide a rational basis for the assessment of damages.' " (*Robinson & Wilson, Inc. v. Stone* (1973) 35 Cal.App.3d 396, 407.) "[F]ailure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 359, italics omitted.)

While it is undisputed that the parties orally agreed that Cheema would resell the dumpster box to LS Trucking, LS does not contend that the parties agreed on an exact price, payment schedule, or interest rate, and the trial court found that "there was never any clear and definite agreement between the parties that the [box] would transfer immediately to LS Trucking with [the] purchase price to be paid to Cheema in monthly installments." We review factual findings about the terms of an oral contract for substantial evidence (*Garfein v. Garfein* (1971) 16 Cal.App.3d 155, 158; *Murphy v. Davis* (1937) 19 Cal.App.2d 316, 319–320). Ample evidence supports the trial court's finding here.[9]

LS Trucking insists that "everyone understood that ownership of the box had to transfer to LS immediately for [the parties'] entire relationship to work," as Cheema "would not have received any dispatches from LS Trucking unless he was acting as a

_____

[9] Moreover, to the extent that LS Trucking is challenging the rejection of its causes of action for Cheema's alleged breach of the agreement to sell it the box, as to which LS bore the burden of proof, the higher standard of review on appeal is whether the evidence compelled a finding in LS's favor. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1528.) It did not.

7

'puller' of equipment owned by [LS], for which the company would receive a rental fee." LS Trucking notes that Cheema repeatedly checked a box on his truck tags indicating that he was using an LS trailer, that LS deducted from all of his payments a sum labeled "Trailer Rental," and that Cheema never protested the deductions in writing. But Cheema testified that he had not understood that ownership of the box would pass before LS Trucking paid for it, and he claimed to have orally objected to the rental deductions from the start. No writing suggests that title to the box was intended to be transferred to LS Trucking before it reimbursed Cheema for the cost of its purchase. LS contends that the agreement was "supposed to be reduced to writing, but Cheema never brought in the necessary documentation regarding his financing agreement with his family" who had loaned him money to buy the truck. Nonetheless, the facts remain that the terms of the transaction were never spelled out, and that title to and registration of the truck, with the box attached, remained in Cheema's name. While LS Trucking contends it was understood that it would pay for the box with monthly installments, it does not contend this subject was ever discussed, much less that there was anything said about the amount or number of installments, when installments would commence, whether interest would accrue on the balance due, or when ownership would be deemed to pass to LS Trucking. And it does seem highly unlikely that Cheema would have agreed to begin paying LS rent for use of the box that he, Cheema, had purchased—at least before LS had even begun reimbursing him for the cost of the box. The fact that when LS Trucking began making monthly payments to Cheema in June 2010 it labeled the checks as repayment of a "loan"—which certainly was never discussed—highlights the absence of any meeting of the minds on the essential terms under which LS was to acquire ownership of the box.

LS Trucking notes the general principle that the law " 'does not favor but leans against the destruction of contracts because of uncertainty,' " and will thus infer "[u]nexpressed provisions of a contract . . . from the writing or external facts." (*Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 481–482.) But all the cases LS Trucking cites involve written contracts. (*Ibid.*; *Crawford v. Continental Cas. Co.*

8

(1968) 261 Cal.App.2d 98, 99–100; *Lunden v. County of Los Angeles* (1965) 233 Cal.App.2d 811, 813; *McIllmoil v. Frawley Motor Co.* (1923) 190 Cal. 546, 550.) We may assume the same principle applies to oral contracts, but application of the principle to an oral understanding is more problematic in the absence of undisputed explicit provisions from which such inferences can be drawn. In this case, given the divergent understandings of the two parties, and the fact that, for almost nine months LS Trucking made no payments consistent with its contention that it was to purchase the box from Cheema with monthly installments, the court did not err in finding the terms on which LS was to acquire ownership of the box so uncertain that the loose understanding could not be judicially enforced.

2. *The court erred in holding that Cheema is not entitled to prejudgment interest.*

The court found that Cheema's damages were not "capable of being made certain until after trial," when the court determined that the oral agreement for LS Trucking to purchase the dumpster box was unenforceable and therefore that LS should not have deducted rental fees from its payments to Cheema. Thus, "there was no certainty until after trial regarding how much Cheema was owed."

The trial court erroneously confused uncertainty over the *amount* of damages with uncertainty as to whether there is liability for damages in an amount that is certain. The former precludes the mandatory award of prejudgment interest under section 3287, subdivision (a), but the latter does not. "Damages are certain or capable of being made certain by calculation, or ascertainable for purposes of the statute if the defendant actually knows the amount of damages or could calculate the amount from information reasonably available to the defendant. [Citation.] . . . A legal dispute concerning the defendant's liability or the proper measure of damages, however, does not render damages unascertainable. [Citations.] [¶] Thus, the general rule is that damages are unascertainable if the amount of damages depends on disputed facts or the available factual information is insufficient to determine the amount, and damages are ascertainable if the only impediment to the determination of the amount is a legal dispute concerning liability or

9

the measure of damages." (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 151; see also, e.g., *Watson Bowman Acme Corp. v. RGW Construction, Inc.* (2016) 2 Cal.App.5th 279, 295.)

Here there was no dispute or uncertainty over the amount of damages Cheema claimed and to which he was ultimately determined to be entitled. The only dispute was whether LS Trucking was entitled to deduct rental charges, in an ascertained amount, from the undisputed amount otherwise owed. With each monthly payment to Cheema, LS submitted a statement showing the gross amount charged to the hirer on each job performed by Cheema, the amount of the brokerage fee deduction, the amount of the rental fee deduction whose propriety is in dispute, and the net amount due. None of those amounts was either uncertain or disputed. The amount LS Trucking owed Cheema for jobs for which he had never been paid, the amount LS had deducted as rent from the payments it did make, and the amount of the nine $1,000 payments for which LS was entitled to an offset were all known and undisputed. Cheema is thus entitled to prejudgment interest on the ascertainable net amount owed him, after the $9,000 offset. (*Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 376 [if amount of claim is certain, but reduced by setoff, prejudgment interest is allowed "on the *balance* found to be due from the time it became due" (italics added)].)

3. *Cheema is entitled to penalty interest on a portion of his recovery.*

The court declined to award Cheema 2 percent penalty interest under section 3322 on the ground that he failed to submit to the court "the charges, including all necessary documentation," that would enable the court to calculate the amount due and owing. From the truck tags that Cheema delivered to LS Trucking for each job, which were received in evidence, it probably would not have been possible for the court to calculate the amounts due. However, the statute (quoted in full in fn. 1, *ante*) does not require that documentation sufficient for calculation of the amount due be submitted to the court, but that such documentation be submitted by the specified date to the broker, so that it can calculate the amount due and make payment within the specified time period, or else

10

suffer a penalty for late payment. There is no dispute that the truck tags that Cheema delivered to LS Trucking were sufficient for LS to make those calculations. LS made those calculations on each monthly statement that it prepared and delivered to Cheema with each payment. And in fact those statements, reflecting both the gross amount of billings and the undisputed and disputed deductions yielding the net amount due, also were received in evidence.

LS Trucking points out that Cheema did not offer documentary proof that he submitted all his truck tags to LS "by the fifth day following the last day of the calendar month in which the transportation was performed." (§ 3322, subd. (a)(1).) However, Cheema testified that he turned his tags in on time and there is no requirement that he maintain a written record of having done so. Moreover, as LS Trucking acknowledges, the trial court did not base its denial of penalty interest on this ground. LS refers to an "implied factual finding" on the issue, but nothing in the court's ruling implies an unstated finding that the truck tags were not timely submitted. LS Trucking does not contend that it requested the court to include such a finding in the statement of decision, and its failure to do so precludes an implication of such a finding. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–560.)

However, the 2 percent penalty should not be applied to the entire amount owed. The penalty does not apply to an amount withheld based on "a good faith dispute over a portion of the charges claimed." (§ 3322, subd. (a)(1).) Our Supreme Court recently reiterated that good-faith-dispute exceptions to prompt-payment statutes do not allow withholding "when there is *any* dispute between the parties, [but] only when there is a dispute directly relevant to the specific payment that would otherwise be due." (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1085.) Neither we nor the trial court question the good faith with which LS Trucking claimed to be entitled to withhold rental charges from Cheema's payments, and the dispute over ownership of the box is "directly relevant to the specific payment[s] . . . due." LS deducted rental fees from the payments to Cheema on the disputed premise that it owned

11

the box. Therefore, the penalty should be applied only to the payments not made to Cheema within the specified statutory period, excluding those amounts that were withheld as rental deductions.[10] On remand the trial court will need to approve the necessary calculations.

4. *The court did not abuse its discretion in setting the amount of attorney fees.*

LS Trucking concedes that, absent a reversal of the judgment on its cross-complaint, Cheema was entitled to an award of fees under the attorney fee clause of the Agreement, but contends that the trial court abused its discretion in setting the amount of that award. LS Trucking contends the court should have reduced the lodestar figure in the declaration from Cheema's counsel ($100,415 for 286.9 hours at $350 per hour). LS Trucking does not challenge counsel's hourly rate, but only the number of hours devoted to the case. It argues that the compensable hours should be reduced to account for Cheema's limited success on the breach of contract cause of action, and to eliminate fees for time spent on unsuccessful motions for judgment on the pleadings, summary judgment, and interest.

As to the size of Cheema's recovery, LS Trucking claims Cheema recovered only $3,666.60 in net damages on his contract cause of action—the monthly payments never made, totaling $12,666.60, less the $9,000 setoff. Based on the assertion in the statement of decision that the $15,168.24 in wrongly withheld rental fees were awarded not for breach of the Agreement but on the common counts, LS Trucking reasons that that amount should not be considered in determining the fees to be awarded for breach of contract. Initially, we question why the wrongful withholding of a portion of the amount due under the Agreement was not a breach of that agreement. Regardless, the attorney fee provision applies to all claims "arising from or [in] relation to" the Agreement, which

---

[10] The good-faith-dispute exception applies only to the specific amounts LS withheld as rental fees, and not to 150 percent of those amounts. LS's failure to make timely payment of additional amounts was not based on a good-faith dispute over the specific amounts due.

12

covers the claim for the amounts withheld as rent whatever the theory of recovery might be. While even the total recovery of $19,113.84 (before the addition of interest) is relatively small in relation to the amount of fees awarded, that ratio is not dispositive if the court determines, as it presumably did, that the effort expended by Cheema's attorneys was reasonably necessary to accomplish that recovery. "It is not uncommon to award attorney fees in an amount higher than the total damages awarded to a plaintiff . . . . Appellant cites no authority for the proposition an award of attorney fees must always be less than the award of damages in a given case, and we are aware of none." (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1276.)

As to the assertedly unnecessary hours, we first note, based on our rulings above, that Cheema was not unsuccessful in seeking both prejudgment and penalty interest. Indeed section 3322, subdivision (a)(3) provides an additional ground for recovering attorney fees for time spent in pursuing the late payment claim. Nor has LS Trucking shown that the court abused its discretion in failing to reduce the lodestar by the amounts attributable to Cheema's unsuccessful motions for judgment on the pleadings and summary judgment. The court is not required to apportion counsel's time between successful and unsuccessful motions or issues, awarding fees only for the former. (*Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 273–274.) While a court may reduce an award to eliminate time unreasonably spent on a specific motion that was frivolous or improper, the trial court did not abuse its discretion in failing to consider the motions at issue, although unsuccessful, not frivolous.

**Disposition**

The judgment is affirmed as to the award to Cheema of $19,113.84 in net damages and the denial of recovery by LS Trucking on its cross-complaint. The judgment is reversed as to the denial of prejudgment interest and penalty interest. The matter is remanded with directions to the trial court to determine the amounts of prejudgment and penalty interest to be added to the judgment in favor of Cheema, consistent with this

13

opinion. The order awarding attorney fees is affirmed. Cheema shall recover his costs on appeal, and may apply in the trial court for reasonable attorney fees incurred on appeal.


POLLAK, P. J.


WE CONCUR:


STREETER, J.
BROWN, J.

Trial court:                          Alameda County Superior Court

Trial judge:                          Honorable Sandra K. Bean

Counsel for plaintiff and appellant:  Jewell J. Hargleroad

Counsel for defendant and appellant:  Paul Kleven

15

A150234, A151044