Filed 2/19/20; Certified for Partial Publication 3/11/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE ex rel. XAVIER BECERRA, as Attorney General, etc.,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM SHINE, Individually and as Trustee, etc.,<br><br>    Defendant and Appellant. | A155903<br><br>(Marin County<br>Super. Ct. No. PRO 1305238) |

After a lengthy bench trial on a petition for William Shine's removal as trustee of a trust, the trial court issued a statement of decision addressing alleged breaches of fiduciary duty by Shine and required Shine to reimburse the trust in the amount of $1,421,598.[1]  After trial, the court awarded the Attorney General $1,654,083.65 in attorney fees and costs.  Shine appeals the award.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2013, the Attorney General petitioned for an accounting relating to a trust established in 1995 by Robert A. and Eva M. Lindskog (the

---

[1] In our opinion filed in case No. A154234, we agree with Shine's challenge to a portion of this award and we modify the judgment to vacate the award of $290,684 against Shine.  In all other respects, we affirm the judgment.

1

Trust).  The People alleged that Shine, one of the trustees, failed to fulfill his duties as trustee, and that he failed to create a charitable organization to be named the "Livewire Lindskog Foundation."  The Attorney General brought causes of action against Shine for breach of fiduciary duty, an accounting, and removal of the trustees (Prob. Code, §§ 15642, 16049, 16420, 17200).

In February 2014, the court removed without prejudice Shine and the other trustees.  In February 2017, the other trustees were dismissed from the case.  The case went to trial in October 2017.  During the trial, Shine agreed to permanently step down as trustee and the court appointed David Bradlow as permanent trustee to administer the Trust.

In February 2018, the court issued a 35-page statement of decision and judgment.  When addressing the Attorney General's claim that Shine should be disgorged of all fees he was paid as trustee of the Trust, the court found "that Shine violated most, if not all of his fiduciary responsibilities and duties."  For example, the court found that "Shine allowed improper tax returns to be filed, allowed a Subchapter S corporation status to be lost (by failing to follow prudent legal advice) and [Shine] used Trust funds to loan money to friends.  His job performance was wholly unacceptable.  Due to Shine's mismanagement, the Trust was damaged significantly."

Nevertheless, the court entered judgment in favor of Shine on many of the examples of his alleged breaches of fiduciary duty because the Attorney General either failed to prove that Shine was grossly negligent or failed to prove specific damages.  Based on the instances in which the Attorney General met its burden of proof, the court ordered Shine to reimburse the Trust in the amount of $1,421,598.[2]

---

[2] See footnote 1, *ante*.

In April 2018, the Attorney General moved, pursuant to Government Code section 12598,[3] for reasonable attorney fees and costs against Shine in the amount of $1,929,757.50.  In November 2018, the court granted in part the motion, awarding the Attorney General attorney fees and costs of $1,654,083.65.  Shine appeals.

DISCUSSION

I.      *The Attorney General's Entitlement to Reasonable Attorney Fees*

Shine concedes that a fee award to the Attorney General is "mandatory" under section 12598, subdivision (b).  Shine claims this "changes nothing."  Shine contends section 12598 "allows only 'reasonable' fees to be considered," which "requires courts to appraise the fee claimant's goals and results in the litigation."  We are not persuaded.

A.      *Governing Law and Standard of Review*

The Government Code provides:  "The Attorney General shall be entitled to recover from defendants named in a charitable trust enforcement action all reasonable attorney's fees and actual costs incurred in conducting that action, including, but not limited to, the costs of auditors, consultants, and experts employed or retained to assist with the investigation, preparation, and presentation in court of the charitable trust enforcement action."  (§ 12598, subd. (b).)

"Attorney's fees and costs shall be recovered by the Attorney General pursuant to court order.  When awarding attorneys' fees and costs, the court shall order that the attorney's fees and costs be paid by the charitable organization and the individuals named as defendants in or otherwise subject to the action, in a manner that the court finds to be equitable and fair." (§ 12598, subd. (c).)

_____

[3] Undesignated statutory references are to the Government Code.

3

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213.) "[T]he trial court has broad authority to determine the amount of a reasonable fee. . . . As we have explained: 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong' "—meaning that it abused its discretion." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

> B. *Section 12598 No Longer Requires Courts to Consider the Results of the Action*

Shine claims section 12598 includes an "effectiveness test." In other words, he contends the trial court was required to consider the Attorney General's lack of success in achieving its litigation goals, and, because the trial court failed to do so, we should reverse and "remand with directions to consider all factors addressed in this brief as to the propriety of a fee award at all."

We disagree. "[E]very fee-shifting statute must be construed on its own merits." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136.) As originally enacted in 1987, section 12598 provided for an award to the Attorney General of "all actual costs," but not attorney fees. (Stats. 1987, ch. 892, § 2, p. 2858.)[4] The statute also provided that "the court shall make findings on whether the

---

[4] We grant the Attorney General's unopposed motion for judicial notice of former section 12598, and excerpts from the legislative history of the statute.

4

Attorney General's action has resulted in pecuniary benefits or corrected a breach of trust for any charitable organization, or charitable purpose. If the court finds in the affirmative, the court shall award recovery of costs . . . and shall order that costs be paid by the charitable organization and the individuals named as defendants . . . in a manner that the court finds to be equitable and fair. The court shall not award costs . . . which exceed one-third of the pecuniary benefit to any charitable organization or charitable purpose realized by the Attorney General's action." (Stats. 1987, ch. 892, § 2, p. 2858.)

The Legislature's intent was to "require that the fiscal burden of supervising charities within the State of California be shared by the charitable organizations and individuals whose conduct makes necessary charitable trust enforcement actions by the Attorney General." (Stats. 1987, ch. 892, § 1, p. 2857.) The purpose of the statute was "to allow the Attorney General to recover, by court order, all of the actual costs incurred . . . in conducting any charitable trust enforcement action that results in pecuniary benefits for charity." (*Ibid.*)

In 2003, the Legislature amended the statute. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1759 (2003–2004 Reg. Sess.) as amended Jul. 27, 2003, p. 3.) It now provides that, as well as actual costs, the Attorney General is also entitled to recover all reasonable attorney fees in charitable trust actions. (*Ibid.*) Notably, the Legislature deleted the language requiring the court to make findings regarding the results of the Attorney General's action. (Stats. 2003, ch. 159, § 6, p. 1661.)

We "assume the Legislature amends a statute for a purpose . . . ." (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243.) In our view, this deletion indicates the Legislature's intent to provide courts with

5

greater flexibility when awarding the Attorney General all reasonable attorney fees and costs in charitable trust enforcement actions, as there is no longer a statutory requirement that the court must make findings regarding the results.  We are not persuaded that we can read into the word "reasonable" a requirement—as Shine would have it—that the court must consider the results of the litigation.

> C. *No Abuse of Discretion in the Amount of the Attorney Fee Award*

Generally, the determination of what constitutes a reasonable attorney fee is committed to the discretion of the trial court.  (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at pp. 1095–1096.)  This determination "ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*Id.* at p. 1095.)  The factors a trial court may consider in deciding whether to reduce the lodestar amount include the litigation's " 'success or failure.' " (*Id.* at p. 1096.)  "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1138.)

Shine claims that, in determining a reasonable amount of attorney fees, the court was *required* to consider the Attorney General's goals and results.

We are not persuaded.  Shine relies primarily on cases interpreting the federal Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988) and California's private attorney general statute.  (Code Civ. Proc., § 1021.5.)  In civil rights cases, the United States Supreme Court expressed a concern about private damages awards producing " ' "windfalls to attorneys." ' " (*Farrar v. Hobby* (1992) 506 U.S. 103, 115–116.)  As Justice O'Connor observed, the federal statute is not " 'a relief Act for lawyers' " who accomplish no public goal "other than occupying the time and energy of

6

counsel, court, and client." (*Farrar v. Hobby,* at pp. 121–122, conc. opn. of O'Connor, J.)

The same concern does not apply here. As explained in the statement of decision, this action was "initiated by the Attorney General's office . . . to bring a civil action 'against Trustees . . . holding property in Trust for charitable purposes . . . to enforce a charitable Trust . . . [and/or to] recover property or the proceeds thereof for and on behalf of any charitable Trust or corporation.' " As further explained in the trial court's decision on the Attorney General's motion for reasonable attorney fees and costs, the Attorney General "petitioned on behalf of the charitable beneficiaries of an unfunded charitable foundation." For its efforts on behalf of these potential charitable beneficiaries, section 12598, subdivision (b) mandates an award of attorney fees to the Attorney General, not to private parties. By amending this statute to provide for the Attorney General's recovery of reasonable attorney fees in charitable trust enforcement actions, the Legislature expected General Fund savings. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1759 (2003–2004 Reg. Sess.) as amended Jul. 27, 2003, p. 3.)

Under California's private attorney general statute, courts have described the extent of a party's success as a key factor in determining the reasonableness of attorney fees. (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 248.) But Code of Civil Procedure section 1021.5 expressly provides that "a court may award attorneys' fees to a successful party." Unlike this statute, the language of section 12598 does not contain a threshold requirement that the Attorney General must be a "successful party."

In addition, under California's private attorney general statute, the

extent of a private party's success or lack thereof is a factor that courts must consider as part of an exercise of their discretion. (*Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 274 [leaving it "to the discretion of the trial court to determine whether time spent on an unsuccessful legal theory was reasonably incurred"]; *Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 326 ["the determination whether a victory is de minimis is generally left to the sound equitable discretion of the trial court"].)

Here, we cannot say the trial court abused its discretion by declining to reduce the Attorney General's attorney fee award based on the difference between the Attorney General's goals and its results. It is true that the court's judgment addressed 19 "claim[s]" or examples of Shine's alleged breaches of fiduciary duty, and that the court issued a judgment in favor of Shine on 12 of them and in favor of the People on the remaining seven claims.

Nevertheless, the Attorney General sought and succeeded in removing Shine as trustee of the Trust. The Attorney General proved Shine's conduct was grossly negligent in numerous ways, including by failing to take action in relation to the loss of favorable tax treatment for property known as Central Valley Homes, by failing to maintain another property, by loaning Trust money to personal friends, by failing to maintain proper records of Trust transactions, and by submitting incorrect tax returns. The Attorney General proved it was "intentionally improper" for Shine to loan Trust money to friends and to allow his daughter to rent an apartment owned by the Trust at below market rent. As a result of "Shine's misconduct and gross negligence," the court ordered Shine to reimburse the Trust in an amount in excess of one million dollars. "We have little doubt the Attorney General's action has at least corrected a breach of trust." (*People v. Orange County Charitable Services* (1999) 73 Cal.App.4th 1054, 1080 [affirming award of actual costs

8

under former section 12598].)

While the Attorney General did not achieve all of its litigation goals, this outcome is a far cry from the result in *Farrar v. Hobby*, *supra*, 506 U.S. at pages 106–107, in which the plaintiff sought damages of $17 million, but was awarded only nominal damages, or the result in *Choate v. County of Orange*, *supra*, 88 Cal.App.4th at pages 318–320, in which the plaintiffs sought hundreds of thousands of dollars in damages, but were awarded just over five thousand dollars. Moreover, in its decision on the Attorney General's motion for fees and costs, the trial court reduced the Attorney General's requested award by over $275,000. We discern no abuse of discretion in the trial court's decision not to further reduce the Attorney General's fee award based on the results of the litigation. (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1397 ["the general rule is that the prevailing party's degree of success is only one of the factors the trial court may consider in determining the amount of reasonable attorney fees"].)

II.    *Shine's Indemnity Argument*

Shine claims his "indemnity rights" require the Trust to pay the fees and costs awarded to the Attorney General. The Attorney General objects that in the trial court Shine did not oppose its fee motion on indemnity grounds. As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal. (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316.) However, "we have discretion to consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts." (*Ibid.*) We exercise our discretion to consider Shine's indemnity argument, and we reject it.

Shine is not entitled to indemnification for the Attorney General's fees and costs. As amended, section 4.9(3)(C) of the Trust provides: "Except for

9

the Trustee's willful misconduct or gross negligence . . . , the Trustee shall be indemnified and held harmless . . . by the trust estate . . . from and against any and all liens, claims, liabilities and expenses, including reasonable attorneys' fees, for which the Trustee may be liable or subjected, arising out of, emanating from or made with respect to the trust or any assets or liabilities thereof . . . ." Section 4.9(3)(D) provides the Trust must indemnify Shine for expenses unless they arise "out of the Trustee's violation of this trust or . . . out of an act or omission performed in an unreasonable manner or in bad faith."

Here, in its statement of decision, the court expressly found that Shine—acting as trustee of the Trust—was grossly negligent in numerous ways. For example, the court found Shine's failure to take action in relation to the loss of favorable tax treatment for Central Valley Homes was grossly negligent. The court found Shine was grossly negligent by failing to maintain another property, by loaning Trust money to personal friends, by failing to maintain proper records of Trust transactions, and by submitting incorrect tax returns. The court found it was "intentionally improper" for Shine to loan Trust money to friends and to allow his daughter to rent an apartment owned by the Trust at below market rent. As a result of "Shine's misconduct and gross negligence," the court ordered that Shine should be disgorged of all fees he received as trustee.

Furthermore, the court expressly found "Shine violated most, if not all of his fiduciary responsibilities and duties." The court found Shine's "job performance was wholly unacceptable. Due to Shine's mismanagement, the Trust was damaged significantly." Based on these findings, we conclude the exceptions in either section 4.9(3)(C) or section 4.9(3)(D) of the Trust apply, and they both preclude Shine from obtaining indemnification from the Trust

10

for the Attorney General's reasonable attorney fees and costs.[5]

   III.   *Shine's Allocation Argument*

Shine's final argument is that his indemnity rights "affect the allocation required" by section 12598, subdivision (c). We reject this argument. Section 12598, subdivision (c) provides in part that "[w]hen awarding attorneys' fees and costs, the court shall order that the attorney's fees and costs be paid by the charitable organization and the individuals named as defendants in or otherwise subject to the action, in a manner that the court finds to be equitable and fair."

Here, in the Attorney General's petition, no charitable organization was named as a defendant. Indeed, the Attorney General sued Shine in part based on his failure to create a charitable organization. In its order awarding attorney fees and costs to the Attorney General, the court notes that, after four years of litigation, "Shine was found to have violated his fiduciary responsibilities to the Trust; was permanently removed as Trustee and was ordered to pay . . . damages." The Attorney General brought this charitable trust enforcement action based on Shine's mismanagement of the Trust, so it is not inequitable or unfair for Shine personally to pay the Attorney General's fees and costs. Shine, and Shine alone, is responsible for the attorney fees and costs awarded to the Attorney General.

---

[5] We also reject any suggestion that Shine is entitled to partial indemnification from the Trust for the Attorney General's fees and costs. In case No. A155833, Shine relies on *Oltmans Construction Co. v. Bayside Interiors, Inc.* (2017) 10 Cal.App.5th 355, to argue for partial indemnification. Here, comparative indemnity principles are not involved, and the Trust does not provide that Shine is entitled to indemnification "except to the extent" of his own willful misconduct or gross negligence.

11

## DISPOSITION

We affirm the trial court's order awarding attorney fees and costs to the Attorney General in the amount of $1,654,083.65.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

_____
Jones, P. J.

WE CONCUR:


_____
Simons, J.


_____
Needham, J.


A155903

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE ex rel. XAVIER BECERRA, as Attorney General, etc., | A155903 |
|     Plaintiff and Respondent, | (Marin County Super. Ct. No. PRO 1305238) |
| v. | |
| WILLIAM SHINE, Individually and as Trustee, etc., | |
|     Defendant and Appellant. | |

**ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION
[NO CHANGE IN JUDGMENT]**

**THE COURT:**

The opinion in appeal No. A155903, filed on February 19, 2020, was not certified for publication in the Official Reports. For good cause appearing, pursuant to California Rules of Court, rules 8.1105(b), (c), and 8.1110, the opinion is certified for partial publication. Accordingly, respondent's request for publication is GRANTED IN PART.

The order effects no change in the judgment.

Dated: _____          _____, P. J.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion parts II and III.

1

Superior Court of Marin County, Hon. Kelly V. Simmons

Epstein & Holtzapple, Robert F. Epstein and Robyn B. Christo; Law Office of Joseph Wolberg, Joseph G. Wolberg; Bien & Summers, Elliot L. Bien for Defendant and Appellant.

Xavier Becerra, Attorney General, Tania M. Ibanez, Assistant Attorney General, Elizabeth S. Kim and Caitlin W. Noble, Deputy Attorneys General for Plaintiff and Respondent.